HENRY G. DOZER V. WILLIAM N. CROSS, CLERK, SAMUEL R. TUCKER, CHAIRMAN, AND THE ROARD OF SUPERVISORS OF CHEBOYGAN COUNTY.

SALARY—OF PROSECUTING ATTORNEY—POWER OF BOARD OF SUPERVISORS TO REDUCE AFTER ONCE FIXING BY THEM.

Relators applied for *mandamus* to compel the payment to him of a portion of his salary as prosecuting attorney, which, by order of the respondent board, had been deducted from his yearly salary as theretofore fixed by said board, by reason of relator's absence from the State on account of ill health and consequent inability to perform for a time the duties of his said office, which duties under an arrangement made by him were performed by other attorneys, whose bills therefor were allowed to them by said board at the time the order for said deduction was made. An order to show cause was granted, and on the hearing had October 20, 1896, on petition and answer a writ of *mandamus* was granted.

*Henry G. Dozer, in pro per*, contended:

1. That under How. Stat. § 558, which provides that "the prosecuting attorneys shall severally receive such compensation for their services as the board of supervisors of the proper county shall, by an annual salary or otherwise, from time to time order and direct;" and How. Stat. § 508, which provides "that the annual salaries of all salaried county officers, which are now or may be hereafter by law fixed by the board of supervisors, shall be fixed by said board on or before the 31st day of October prior to the commencement of the term of said officers, and the same shall not be increased or diminished during the term for which such officers shall have been elected or appointed," the respondent board at its October, 1890, session fixed the salary of the prosecuting attorney of Cheboygan county at $600 per year; that the statute last cited is mandatory, and when the respondent board had performed its duty thereunder it, exhausted its power, and could not thereafter reduce or diminish the salary so fixed during the term for which said salary had been fixed as aforesaid; citing *Douvielle v. Supervisors of Manistee County*, 40 Mich. 589; *Knappen v. Supervisors of Barry County*, 46 Id. 23.

2. That if the accounts which the respondent board allowed were legal and proper charges against the county, it exhausted its power in allowing the same, and had no legal authority to deduct the amount thereof from relator's salary; that if said charges were illegal or unjust the duty of the board to disallow them was plain; that in any event it had no legal authority to diminish relator's salary as prosecuting attorney by deducting said claims or any sum whatever therefrom.

3. That How. Stat. § 483, subd 9, provides that the board of supervisors shall have power "to prescribe and fix the compensation for all services rendered for, and adjust all claims against their respective counties, and the sums so fixed and defined shall be subject to no appeal;" that the board is a creature of the statute, and has no powers except those conferred upon it by the statute; that any attempted proceedings beyond the provisions of the statute are absolutely void; that when the board attempts to allow any claim against any individual or corporation aside from the county which it represents, such proceedings are absolutely without legal sanction, and therefore void.

4. That the salary of prosecuting attorney having been fixed by the respondent board prior to the commencement of the term of that officer for 1891 and 1892, and the duties of that office having been faithfully performed during the entire of said term by relator, the attempt of said board to diminish said salary affords no legal excuse to the chairman and clerk of said board for their refusal to draw the required warrant upon the county treasurer for the remainder of said salary.

5. That *mandamus* is the proper remedy; citing *People v. Board of Auditors*, 5 Mich. 223; *McBride v. City of Grand Rapids*, 47 Id. 236; that interest from time of demand may be allowed when the sum demanded is such a settled claim as would sustain a recovery at law; citing *Martin v. Tripp*, 51 Mich. 184.

6. That in *People v. Miller*, 24 Mich. 458, where the respondent was convicted of an unlawful intrusion into the office of treasurer of Wayne county, and a motion for judgment for damages was opposed on the ground of the refusal of the trial judge to allow in reduction thereof evidence of the value of respondent's services, or of the earnings of the relator in other pursuits while kept out of office, Mr. Justice CAMPBELL, speaking for the Court, said:

"The official salary is not made dependent on the amount of work actually

done by the treasurer, and does not require his personal services to any considerable extent. He would not forfeit it by leaving the bulk, or possibly the whole, of his substantial duties to the deputy and clerks. He would not necessarily lose it even by misconduct unless removed from office. It is given no doubt on the theory that a treasurer is worth so much to the county, but not upon any specific apportionment whereby the value of his time and his sagacity, and his character, and his business knowledge can be determined separately. But whatever may be the basis of the allowance, it is fixed upon the theory that it will usually be paid to a person who has been selected by the electors or appointing power as a desirable incumbent. The amount of personal labor done by the officer can form but a small part of his claim to the salary in such an office as this, and he may be much less competent than his deputies."

*George E. Frost,* Acting Prosecuting Attorney, for respondent, contended:

1. That the following statutes bear upon the question of the duties to be performed by prosecuting attorneys:

*a*—How. Stat. § 551, which provides that "the prosecuting attorneys shall in their respective counties appear for the State or county, and prosecute or defend in all courts of the county all prosecutions, suits, applications, and motions, whether civil or criminal, in which the State or county may be a party or interested.

*b*—Section 55 of the tax law of 1889, 1891, which made it the duty of the prosecuting attorney to prosecute, on the part of the State, all proceedings for the sale of delinquent tax lands, and provided that in case of his refusal, neglect, or inability to do so the court should appoint some competent person to take charge of and prosecute the same, who should be paid by the county; and that the board of supervisors might employ some competent person to prosecute such proceedings or assist therein.

*c*—3 How. Stat. § 559*a*, which provides "that in all criminal proceedings removed to the Supreme Court by appeal or otherwise, it shall be the duty of the prosecuting attorney of the county from whence any cause is so removed to appear in behalf of the people therein, and with the advice and assistance of the Attorney General to conduct such cause in such court, and for his services in any such case, such prosecuting attorney shall, in addition to his regular salary, receive a reasonable compensation, including his

expenses in traveling to and from and on his attendance in such court, to be ascertained and determined by the Board of State Auditors, and paid by the State out of any funds belonging to the State not otherwise appropriated. *Provided,* however, that the expense of printing any brief or argument prepared in any such case shall be paid by the county from which the case is removed."

2. Under the following decisions of this Court a writ of *mandamus* should be denied: *People v. Judges,* 1 Doug. 302; *People v. Wattles,* 13 Mich. 446; *People v. Township Board,* 14 Id. 30; *People v. Circuit Judge,* 19 Id. 296; *People v. Supervisors,* 36 Id. 377; *Peck v. Supervisors,* 47 Id. 477; *Post v. Township Board,* 63 Id. 323.

3. That instead of the county of Cheboygan owing anything to relator for balance of salary, he has been largely overpaid; that the respondent board allowed relator, and he has been paid on accounts by him presented, mainly for services the performance of which legally devolved upon him as prosecuting attorney, the sum of $386.06, which sum, with the sum of $101.95 allowed and paid to the attorneys who performed his duties during his absence, largely overpays said claimed balance of salary.

The facts as shown by the petition and answer were:

*a*—That in November, 1890, relator was elected to the office of prosecuting attorney of Cheboygan county, the duties of which he discharged during the term for which he was elected.

*b*—That at their annual session in October, 1890, the board of supervisors of Cheboygan county fixed the salary of prosecuting attorney at the sum of $600 a year.

*c*—That for a number of years last past it has been the custom and practice in said county for the county clerk at the close of each quarter to draw and sign orders on the county treasurer for $150 in payment of the salary of the prosecuting attorney for such quarter.

*d*—That since January 1, 1891, the respondent Cross has been clerk of Cheboygan county.

*e*—That relator in the spring of 1893, as alleged in his petition, by reason of ill health caused by overwork as prosecuting attorney, was obliged to discontinue all work, and on or about April 5,

1892, left for the South, where he remained for a time; that his health having improved he returned to the county of Cheboygan, and on May 28, 1892, resumed the entire business of his office; that while ill and unable to leave his house, and before leaving for the South, one C. S. Reilly, an attorney of said county, appeared for the people in a justice court criminal case, for which services he charged the county $11.95; that relator, about April 1, 1892, agreed with John F. Chambers, an attorney of said county, that he should attend to such of the business pertaining to relator's said office as could not be postponed until relator's return for the compensation of $25 per month, a bill for which said attorney should present to the board of supervisors of said county for allowance; that during relator's absence he gave his said official business his personal attention and counsel by correspondence, and furnished the required affidavits and procured the continuance of all important cases pending in court, and belonging to said business.

[Respondents in their answer say that they have no personal knowledge as to the reasons which impelled relator to leave the county of Cheboygan in the spring of 1892, nor as to what, if any, arrangement he made with Attorney Chambers to fill his place as prosecuting attorney, nor how or by what means Attorney Reilly performed some of relator's official duties, but they claim as matter of law that such reasons are immaterial; that if relator became unable or incapacitated to perform his official duties so that such duties had to be performed by others at the expense of the county, relator could not legally or equitably claim his stipulated compensation during such period of inability. EDITOR.]

f—That the board of supervisors of Cheboygan county at their annual meeting in October, 1892, allowed the bill of Attorney Reilly; also a bill in favor of Attorney Chambers for $90 for services rendered by virtue of his agreement with relator, subject to the proviso that the amount of said bills should be deducted from the salary of relator.

[Respondents in their answer charge that said bills were allowed at the earnest request of relator, and under his advice and sanction as legal adviser of said board of supervisors; that both of said bills were made out and presented to said board at the special instance and request and under the directions of relator; that they were for services for which the county was in no way liable, and were allowed only because relator requested and advised their allowance. EDITOR.]

g—That relator made repeated demands upon the respondents Cross and Tucker to draw, sign, and deliver to him their order on the county treasurer for said $150 back salary, all of which demands were refused; that finally and on January 6, 1893, relator called the attention of said board of supervisors to the neglect of said clerk and chairman to draw and sign said order, and requested said board to authorize and instruct said officers to comply with relator's request; that said board refused to take any action in the premises; that on June 22, 1896, relator again challenged by a written communication the attention of said board to said matter, and requested them to cause said order to be drawn and signed; that said board refused to take any action on said communication, or to allow said bill, but laid the same on the table indefinitely.

[Respondents in their answer claim that the board of supervisors in 1896 had no legal authority to pass upon relator's claim, inasmuch as the whole matter had been before the board in 1892 and 1893, and duly passed upon by said board.]

h—Respondents in their answer set up as affirmative matter of defense the allowance to relator upon certain accounts by him presented to the board of supervisors for services rendered by him as prosecuting attorney, the performance of which in the main legally devolved upon him by virtue of his office, aggregating $1,096.66, the sum of $386.06, and averred that said sum, as also the sums

paid to Attorneys Reilly and Chambers, should be held chargeable against relator, and if thus applied would largely over pay his unpaid salary; that these are matters which cannot properly be passed upon and adjudicated on relator's petition, but should be left for adjudication in a suit at law. Respondents added to their answer a general demurrer to relator's petition.